DENNIS MOORE, Employee, Plaintiff v. CONCRETE SUPPLY COMPANY, Employer, ROYAL INSURANCE COMPANY, Carrier, Defendants

No. COA01-302

(Filed 19 March 2002)

**1. Workers' Compensation— Form 21 agreement—not located**

The Industrial Commission did not err in a workers' compensation action by making findings and conclusions regarding a stipulation that the parties had entered into a Form 21 agreement where defendant contended that the stipulation had been condi-

MOORE v. CONCRETE SUPPLY CO.

[149 N.C. App. 381 (2002)]

tioned upon the Form 21 being located, which was not done. Defendants did not argue that the stipulation was the result of fraud, misrepresentation, undue influence, or mistake, and all of the evidence in the record supported the existence of the stipulation.

**2. Workers' Compensation— Functional Capacity Evaluation—evidence**

The trial court did not err in a workers' compensation action by making a finding regarding plaintiff's Functional Capacity Evaluation which defendant challenged as incomplete without offering supporting legal authority. The evidence supported the finding.

**3. Workers' Compensation— ability to earn former wages— job search—evidence sufficient**

The Industrial Commission did not err in a workers' compensation action in its findings regarding plaintiff's ability to earn his former wages and his job search where defendant contended that plaintiff was not truly interested in working, but there was evidence supporting both findings.

**4. Workers' Compensation— make work position—justified refusal**

The Industrial Commission did not err in a workers' compensation action by finding that plaintiff was justified in turning down a "maintenance worker" position offered by defendant because the position was "make work" and not suitable employment for plaintiff, a former concrete truck driver, where there was testimony that no individual employee assumed the duties of the maintenance worker position, that the position was never advertised to the public, and that it had never existed and was never filled after being refused by plaintiff.

Appeal by defendants-appellants from Amended Opinion and Award of the North Carolina Industrial Commission entered 18 September 2000. Heard in the Court of Appeals 30 January 2002.

*Tania L. Leon, P.A., by Tania L. Leon, for the plaintiff-appellee.*

*Jones, Hewson & Woolard, by Kenneth H. Boyer, for the defendants-appellants.*

MOORE v. CONCRETE SUPPLY CO.

[149 N.C. App. 381 (2002)]

WYNN, Judge.

Employer Concrete Supply Company and insurer Royal Insurance Company appeal from an 18 September 2000 amended opinion and award of the Industrial Commission, awarding employee Dennis Moore ongoing workers' compensation disability benefits and medical expenses resulting from a compensable back injury by accident at work on 30 April 1995. On that date, Moore—a concrete truck driver—sustained a lower-back injury while using a jack-hammer to remove hardened concrete from inside his truck.

Dr. Russell T. Garland initially treated Moore for lower-back pain, instructing him to avoid heavy lifting, and recommending that he undergo physical therapy. Thereafter, Dr. Garland placed Moore on light duty. An 11 August 1995 MRI of Moore's lumbar spine revealed no evidence of a herniated disc or root compression; however, the MRI indicated congenital canal stenosis due to congenitally short pedicles with interfacetal hypertrophy at multiple levels. Dr. Garland referred Moore to Dr. Mark B. Hartman of the Miller Orthopaedic Clinic.

In the fall of 1995, Moore underwent a Functional Capacity Evaluation to determine his ability to work and his work restrictions, if any. Following completion of the evaluation, Dr. Hartman determined that Moore was capable of medium level work but was incapable of long-term truck driving. On 5 November 1995, Moore reached maximum medical improvement but was still unable to return to his pre-injury employment due to his 30 April 1995 injury by accident.

In January 1996, defendants employed John P. McGregor to provide vocational rehabilitation services to Moore; McGregor took Moore's medical and vocational history and outlined a work plan for him. In April 1996, McGregor met with Jim Shaar, Concrete Supply Company's personnel manager, to discuss positions for which Moore might qualify.

In early May 1996, McGregor prepared a job description for a "maintenance worker" position with Concrete Supply Company, and forwarded the job description to Dr. Hartman. Dr. Hartman opined that the job duties of the position were within Moore's physical limitations and restrictions, and approved the job description. Dr. Garland reviewed Moore's Functional Capacity Evaluation and similarly concluded that the proffered job was within Moore's physical

limitations and restrictions. Concrete Supply Company formally offered the "maintenance worker" position to Moore, to begin on 24 June 1996; but Moore refused to accept or even attempt the position.

Thereafter, defendants filed a Form 24 to terminate payment of compensation to Moore, which was approved on 12 November 1996 by an administrative order of the Commission retroactive to 24 June 1996 based upon Moore's unjustified refusal to attempt the physician-approved "maintenance worker" position with Concrete Supply Company. Following a hearing on 7 December 1997, Deputy Commissioner W. Bain Jones, Jr. filed an opinion and award on 30 April 1998 concluding that Moore unjustifiably refused a suitable job within his restrictions offered by Concrete Supply Company, and that Moore's compensation was properly terminated effective 24 June 1996. Moore appealed; on 28 May 1999, the full Commission modified and affirmed in relevant part Deputy Commissioner Jones's opinion and award. Moore moved for reconsideration; on 30 September 1999, the full Commission entered a new opinion and award denying Moore's motion, vacating the previous 28 May 1999 opinion and award as a result of errors therein, but otherwise concluding that Moore unjustifiably refused Concrete Supply Company's suitable job offer.

Moore again moved for reconsideration of the award; on 16 November 1999, the Commission granted that motion which resulted in an amended opinion and award on 18 September 2000 finding that the "maintenance worker" position offered by Concrete Supply Company to Moore was "make work" and was not suitable employment. The Commission therefore concluded that Moore's refusal of the position was justified, and that the Form 24 terminating Moore's compensation was erroneously approved. Accordingly, the Commission awarded Moore ongoing total disability compensation for the period from 13 November 1996 continuing until Moore returns to work or until further order of the Commission. From this amended opinion and award, defendants appeal.

---

On an appeal from an opinion and award of the Commission, this Court is generally limited to addressing two questions: (1) Whether there is any competent evidence to support the Commission's findings of fact; and (2) Whether the Commission's findings of fact support its conclusions of law. See *Lowe v. BE&K Construction Co.*, 121 N.C. App. 570, 573, 468 S.E.2d 396, 397 (1996). The Commission's find-

ings are conclusive on appeal if supported by any competent evidence, even where the evidence may support a contrary finding. *See Bailey v. Sears Roebuck & Co.*, 131 N.C. App. 649, 652-53, 508 S.E.2d 831, 834 (1998). "[T]he Commission is the sole judge of the credibility of the witnesses as well as how much weight their testimony should be given." *Id.* at 653, 508 S.E.2d at 834.

[1] Defendants first challenge the Commission's Stipulation 4, which provides:

4. Pursuant to an approved Form 21 entered into by the parties, plaintiff received compensation at the rate of $301.35 from 1 May 1995 through 13 November 1995 and from 8 December 1995 through 12 November 1996.

Defendants also challenge Conclusion of Law 2 and Finding of Fact 4 based on the alleged invalidity of Stipulation 4. Conclusion of Law 2 states that:

2. On 30 April 1995, plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with defendant employer. G.S. § 97-2(6). As the result of his 30 April 1995 injury by accident plaintiff was paid worker's compensation benefits from 30 April 1995 through 12 November 1996 pursuant to an approved Form 21 Agreement for Compensation entered into by the parties. G.S. § 97-29.

Finding of Fact 4 details the evidence supporting Stipulation 4:

4. The parties in this matter entered into a Pre-Trial Agreement, which set forth certain stipulations. One such stipulation, (1)(E) in the parties['] Pre-Trial Agreement, establishes that "[t]he parties entered into a Form 21 agreement which was approved by the Commission." The Pre-Trial Agreement further establishes the periods for which plaintiff was paid temporary total disability benefits following the entering of this Form 21. In addition to the written Pre-Trial Agreement, at the hearing on 9 December 1997, Deputy Commissioner Jones read into the record a summary of the stipulations entered into by the parties. Beginning on line 17 of Page 1 of the transcript, the Deputy [Commissioner] stated that "[t]he parties have also stipulated that the compensation rate in this matter is $301.35, pursuant to a Form 21 agreement, which was entered into by the parties and approved by this Commission." Also, it is undisputed that defendants filed an Industrial Commission Form 24 Application to Suspend Benefits,

which was approved on 12 December 1996. This course of action by defendants supports the conclusion that a Form 21 had been approved in this case. Although the parties and the Commission are presently unable to locate the approved Form 21 in this matter, that facts and procedural history in this case without question establishes that such a form did exist and supports the [f]ull Commission['s] inclusion of the proper stipulation which had been previously agreed to by the parties. Accordingly, the [f]ull Commission finds that the parties entered into a Form 21 agreement for the payment of temporary total disability compensation which was approved by the Commission.

Defendants do not contest the finding that "plaintiff received compensation at the rate of $301.35 from 1 May 1995 through 13 November 1995 and from 8 December 1995 through 12 November 1996," but rather challenge only the stipulation that the parties entered into an approved Form 21. Defendants contend in their first assignment of error that Stipulation 4, Conclusion of Law 2 and Finding of Fact 4 "are not supported by competent evidence and are contrary to the evidence that the stipulation regarding the Form 21 was conditioned on the parties or the Industrial Commission locating a signed or approved Form 21, which did not occur." In their brief, defendants argue that the stipulation that the parties had entered into a Form 21 agreement was entered by defendants "on the condition that the plaintiff produce the Form 21 that the plaintiff alleged the parties had entered into, but which no one had been able to locate[.]" Because the Form 21 was not located, and the Commission file did not contain a signed or approved Form 21, defendants assert that this "conditional stipulation was deemed withdrawn[.]" We disagree.

"A stipulation approved by the Commission 'is binding absent a showing that there has been error due to fraud, misrepresentation, undue influence or mistake . . . [.]' " *Tucker v. Workable Company*, 129 N.C. App. 695, 701, 501 S.E.2d 360, 365 (1998) (quoting *Little v. Food Service*, 295 N.C. 527, 534, 246 S.E.2d 743, 747 (1978) (citations omitted)). *See* N.C. Gen. Stat. § 97-17 (1999).

In the instant case, defendants do not argue that Stipulation 4 was a result of error due to fraud, misrepresentation, undue influence or mistake. Indeed, all the evidence in the record, including the transcript from the 9 December 1997 hearing before Deputy Commissioner Jones and the Pretrial Agreement (signed by the parties and submitted to the Commission on 21 November 1997), support the existence of this stipulation. The evidence further supports

MOORE v. CONCRETE SUPPLY CO.

[149 N.C. App. 381 (2002)]

Finding of Fact 4, which in turn supports Conclusion of Law 2. Defendants' first assignment of error is therefore rejected.

[2] Defendants next contest the Commission's finding 8, which provides:

> 8. In September 1995, a Functional Capacity Evaluation was to be performed to determine whether plaintiff was capable of working and if so, what were his restrictions, if any. At the completion of the evaluation, Dr. Hartman indicated plaintiff was capable of medium level work with lifting limitations of fifty (50) pounds occasionally, twenty to twenty-five (20-25) pounds constantly and standing for no longer tha[n] twenty (20) minutes consecutively. Dr. Hartman further determined plaintiff was unable to continue to do long term truck driving.

Defendants' only argument concerning this finding states that "[t]he findings of the [Functional Capacity Evaluation] ordered by Dr. Hartman and reviewed by both Dr. Hartman and Dr. Garland specify plaintiff's physical capabilities and contradict the incomplete summary contained in Finding of Fact 8." Defendants apparently are challenging the "completeness" this finding, rather than the sufficiency of the evidence supporting it. However, defendants offer no legal authority in support of this challenge, and a review of the record reveals competent evidence supporting this finding. Miller Orthopaedic Clinic's medical records for Moore reveal an entry by Dr. Hartman dated 8 November 1995 evaluating Moore's Functional Capacity Evaluation, indicating that it "basically says that [plaintiff] is capable of a medium level job with lifting limitations of 50 lbs. occasionally, 20-25 lbs. constantly and no standing for longer than 20 minutes consecutively or sitting longer than 45-50 minutes consecutively." This evidence more than adequately supports the Commission's finding; defendants' assignment of error is rejected.

[3] Defendants next challenge findings 12 and 13, which provide as follows:

> 12. With the assistance of Mr. McGregor, plaintiff made approximately one-hundred and twenty (120) job contacts from January 1996 through early May 1996, averaging approximately thirty (30) contacts per month. Plaintiff also contacted Mr. Shaar weekly to inquire about job openings with defendant-employer. However, during this period, no job openings with defendant-employer were communicated to plaintiff.

13. In early May 1996, a job description of a "maintenance worker" position for plaintiff was prepared by Mr. McGregor who forwarded the job description to Dr. Hartman on or about 31 May 1996. Mr. McGregor followed this up with a telephone conversation regarding Dr. Hartman's decision. Plaintiff was not provided with a copy of the job description prior to it being sent to Dr. Hartman.

Defendants contend that Moore's job search records indicate that he was not truly interested in working, in contradiction of finding 12, and that "the facts of record" contradict finding 13. However, a review of Moore's job search records reveals competent evidence supporting finding 12, and both Moore's and McGregor's testimony on 9 December 1997 before Deputy Commissioner Jones support finding 13. Defendants' arguments to the contrary are without merit.

Defendants also challenge finding 29, which states:

29. Although plaintiff reached maximum medical improvement by 8 November 1995 and had been assigned a 5% permanent partial impairment for his back, plaintiff was unable to earn wages in his former job as a truck driver for defendant-employer or for any other employer from 13 November 1996 through the present and continuing.

Defendants contend that "[t]here is no evidence, medical or otherwise, that plaintiff is totally disabled, in contradiction of" finding 29. However, finding 8, which is uncontested by defendants, states that Moore reached maximum medical improvement on 5 November 1995 "but was unable to return to his pre-injury employment due to [his] 30 April 1995 injury by accident." Dr. Hartman's medical records and deposition testimony indicate that he assigned Moore a 5% permanent partial impairment rating on 8 November 1995 following a review of Moore's Functional Capacity Evaluation. A Form 25R, signed by Dr. Hartman on 8 November 1995, was filed with the Commission on 15 November 1995 indicating a 5% permanent impairment to Moore's back. Furthermore, McGregor testified before Deputy Commissioner Jones that there was no question that Moore could not return to his former job as a concrete truck driver. Defendants' challenge to finding 29 is without merit.

[4] Defendants next challenge the Commission's findings and conclusions concerning the "maintenance worker" position offered by Concrete Supply Company to Moore. Defendants contend that the

Commission erred in finding that the "maintenance worker" position constituted "make work" and was not suitable employment for Moore, and that Moore's refusal thereof was therefore justified. We disagree.

To obtain worker's compensation, the claimant must prove both the existence and extent of his disability. *See Saums v. Raleigh Community Hospital*, 346 N.C. 760, 763, 487 S.E.2d 746, 749 (1997). "[O]nce a Form 21 agreement is entered into by the parties and approved by the Commission, a presumption of disability attaches in favor of the employee." *Id.* The burden then shifts to the employer to show that the claimant is employable. *See id.* The claimant need not present evidence at the hearing unless the employer claims that the employee is capable of earning wages and presents evidence showing both that suitable jobs are available, and that the claimant is capable of getting one, taking into account the claimant's limitations. *See id.* "[W]hen an employer attempts to show an employee is no longer entitled to compensation for disability based upon the proffer of a job specially created for the employee, the employer must come forward with evidence that others would hire the employee 'to do a similar job at a comparable wage.' " *Smith v. Sealed Air Corp.*, 127 N.C. App. 359, 362, 489 S.E.2d 445, 447 (1997) (quoting *Saums*, 346 N.C. at 765, 487 S.E.2d at 750).

In the instant case, the parties entered a Form 21 agreement that was approved by the Commission, thereby entitling Moore to a presumption of disability and shifting the burden to defendant-employer to rebut that presumption. Defendants presented evidence that a "maintenance worker" position was offered to Moore but was refused. Defendants contend that this constituted competent evidence that a suitable job was available to Moore that he was capable of securing, given his limitations.

Under N.C. Gen. Stat. § 97-32 (1999), an injured employee is not entitled to worker's compensation if the employee refuses suitable employment, unless such refusal is justified in the Commission's opinion. Clearly, if the proffered employment is not suitable for the injured employee, the employee's refusal thereof cannot be used to bar compensation to which the employee is otherwise entitled. *See McLean v. Eaton Corp.*, 125 N.C. App. 391, 481 S.E.2d 289 (1997); *Peoples v. Cone Mills Corp.*, 316 N.C. 426, 342 S.E.2d 798 (1986). Furthermore, an employer cannot avoid its duty to pay compensation by offering the employee a position that could not be found else-

where under normally prevailing market conditions. *See Peoples*, 316 N.C. at 439, 342 S.E.2d at 806.

Competent evidence existed before the Commission that the "maintenance worker" position constituted "make work" specially created for Moore, and did not exist in the ordinary marketplace. Testimony by McGregor and Moore before Deputy Commissioner Jones, and deposition testimony by Shaar, indicated that no individual employee at Concrete Supply Company assumed the duties of the "maintenance worker" position; rather, the duties were performed by various drivers. Shaar testified that the position was never advertised to the public, had never previously existed and was never subsequently filled after being refused by Moore. This evidence supports the finding that the offered position was make-work, and thus Moore was justified in refusing the "maintenance worker" position. *See Smith*, 127 N.C. App. at 363, 489 S.E.2d at 447-48 (describing factors tending to establish a position as make-work).

Defendants have abandoned their remaining assignments of error 8-10 by failing to argue them in their brief. *See* N.C.R. App. P. 28(b)(6) (2002). Nonetheless, we have reviewed the record in its entirety and conclude that the Commission's conclusions of law were supported by its findings of fact, which in turn were supported by competent evidence in the record. Accordingly, the Commission's 18 September 2000 amended opinion and award is, in all respects,

Affirmed.

Judges HUDSON and THOMAS concur.