LINDA M. BAILEY, EMPLOYEE-PLAINTIFF v. WESTERN STAFF SERVICES, EMPLOYER-DEFENDANT, AND TRAVELERS INSURANCE COMPANY, CARRIER-DEFENDANT

No. COA01-716

(Filed 16 July 2002)

**1. Workers' Compensation— employer's failure to admit liability for claim-entitlement to direct medical treatment**

The Industrial Commission did not err by concluding that defendant employer failed to properly admit liability for plaintiff employee's workers' compensation claim and thus was not entitled to direct plaintiff's medical treatment, because: (1) defendant failed to file an appropriate Industrial Commission Form stating its position regarding liability within fourteen days of notice of the claim as required by N.C.G.S. § 97-18 and Industrial Commission Rule 601; and (2) defendant's 21 July letter to plaintiff's attorney failed to admit liability for plaintiff's disability claim or medical expenses, and the other documents provided by defendant do not establish a course of conduct indicating acceptance of plaintiff's claim.

**2. Workers' Compensation— suitable employment—makeshift positions**

The Industrial Commission did not err in a workers' compensation case by concluding that plaintiff employee was not barred by N.C.G.S. § 97-32 from receiving wage compensation even though she refused defendant employer's alleged offer of suitable employment, because: (1) creation for injured employees of makeshift positions which do not exist in the ordinary marketplace will not meet an employer's responsibilities under the

Workers' Compensation Act, and the facts of this case suggest the position was "make work;" (2) several days before the job's starting date, defendants wrote to plaintiff to terminate her employment for failure to appear at the "temporary job;" and (3) there is evidence to support the finding that plaintiff's refusal of the work was reasonable.

### 3. Workers' Compensation— temporary total disability—competent evidence

The Industrial Commission did not err in a workers' compensation case by determining that plaintiff employee was entitled to temporary total disability compensation because there is competent evidence to support the Commission's findings of fact, and thus, they are conclusively established notwithstanding any evidence tending to contradict the findings.

Appeal by defendant-appellants from an Opinion and Award entered 11 January 2001 by the North Carolina Industrial Commission. Heard in the Court of Appeals 17 April 2002.

*Robert A. Lauver for plaintiff-appellee.*

*Hedrick, Eatman, Gardner & Kincheloe, L.L.P., by Neil P. Andrews for defendant-appellants.*

BIGGS, Judge.

Defendants, Western Staff Services and Travelers Insurance Company, appeal from the Industrial Commission's award of workers' compensation benefits and attorney fees to plaintiff (Linda M. Bailey). For the reasons that follow, we affirm.

In 1998, plaintiff was employed by defendant Western Staff Services (Western), a temporary employment agency, and in March of that year Western placed her at 'Pharmagraphics' as a machine operator. On 28 April 1998, plaintiff struck her elbow on a machine while performing an assigned cleaning procedure for Pharmagraphics. Several days later, when plaintiff reported the incident to a supervisor at Pharmagraphics, she was directed to report it to Western, which she did on 5 May 1998. Plaintiff later testified that she did not seek medical care at that time because her Pharmagraphics supervisor had warned her that she would be fired if her injury caused her to miss any work. Following her injury, plaintiff continued to work for ten days, but her arm became swollen and tender,

and her injury was increasingly painful. Plaintiff was unable to work an overtime shift on Saturday, 9 May 1998, and was thereafter terminated by Pharmagraphics. She did not work between that time and the time of the hearing. During the six months following her injury, plaintiff was treated by several physicians, including a neurologist and an orthopedist.

On 26 May 1998, Western filed an Industrial Commission Form 19, reporting plaintiff's injury to the Industrial Commission, and acknowledging that plaintiff was not working or receiving wages from them. On 1 June 1998, defendants wrote to plaintiff, denying her workers' compensation claim for "noncompliance" with their investigation. However, because the letter was sent to the incorrect city, plaintiff did not receive it until 3 June 1998, at which time she participated in a tape-recorded telephone interview with defendants regarding her injury. The next day, 4 June 1998, defendants wrote to plaintiff offering her a "temporary position" to begin 8 June 1998. However, on 5 June, three days before the job's starting date, defendants wrote plaintiff that she was terminated for failure to "appear at the job site[.]" On 18 June 1998, defendants wrote plaintiff, asserting the right to "direct your medical treatment once we accept compensability for your claim." The letter expressly denied liability for plaintiff's disability claim, based upon plaintiff's purported refusal of the "modified duty" offered by Western. On 21 July 1998, defendants wrote to plaintiff's attorney regarding plaintiff's workers' compensation claim; this letter was copied to the Industrial Commission.

On 30 July 1998, plaintiff filed a request for a hearing on her workers' compensation claim; the next day, defendants filed an Industrial Commission Form 61, "Denial of Workers' Compensation Claim." Plaintiff's case was heard before an Industrial Commission deputy commissioner on 11 February 1999. In its opinion filed 11 March 2000, the deputy commissioner concluded that (1) defendants had failed to admit liability for plaintiff's claim prior to the hearing, and thus had not obtained the right to direct plaintiff's medical treatment; and (2) plaintiff was entitled to temporary total disability and to medical expenses. Defendants appealed to the Full Commission, which heard the matter on 25 October 2000. The Industrial Commission issued an opinion on 11 January 2001, affirming the deputy commissioner's ruling with minor modifications. Defendants appeal from the Industrial Commission's Opinion and Award.

## Standard of Review

Appellate review of decisions of the Industrial Commission is "limited to a determination of (1) whether the Commission's findings of fact are supported by any competent evidence in the record; and (2) whether the Commission's findings justify its conclusions of law." *Goff v. Foster Forbes Glass Div.*, 140 N.C. App. 130, 132-33, 535 S.E.2d 602, 604 (2000) (citation omitted). The Commission's findings of fact are conclusive on appeal if supported by competent evidence, even if there is evidence to support a contrary finding, *Hedrick v. PPG Industries*, 126 N.C. App. 354, 484 S.E.2d 853, *disc. review denied*, 346 N.C. 546, 488 S.E.2d 801 (1997), and the Commission is the sole judge regarding the credibility of witnesses and the strength of evidence, *Effingham v. Kroger Co.*, 149 N.C. App. 105, 561 S.E.2d 287 (2002). The Commission's conclusions of law, however, are reviewed *de novo*. *Grantham v. R.G. Barry Corp.*, 127 N.C. App. 529, 491 S.E.2d 678 (1997), *disc. review denied*, 347 N.C. 671, 500 S.E.2d 86 (1998).

I.

**[1]** Defendants argue first that the Industrial Commission erred in finding that they failed to properly admit liability for plaintiff's workers' compensation claim, and thus were not entitled to direct plaintiff's medical treatment. We disagree.

N.C.G.S. § 97-18 (2001), which sets out an employer's duties when notified of an employee's injury or accident, generally requires an employer to make a determination regarding liability for compensation within 14 days of notice of an employee's injury, and to file the appropriate form with the Industrial Commission indicating the employer's position. The statute provides in pertinent part:

(b) When the employer admits the employee's right to compensation, the first [payment]. . . . <u>shall</u> [be] due . . . [14] day[s] after the employer has . . . notice of the injury[, and] . . . the insurer <u>shall</u> immediately <u>notify</u> the Commission, on a <u>form prescribed by the Commission</u>, that compensation has begun[.] . . . The first <u>notice</u> of payment to the Commission <u>shall contain</u> the date and nature of the injury, . . . the [employee's wages], the weekly compensation rate, the date the disability . . . began, and the date compensation commenced.

(c) If the employer <u>denies</u> the employee's right to compensation, the employer <u>shall notify</u> the Commission, . . . [by] the fourteenth

day after . . . notice of the injury[,] on a <u>form prescribed by the Commission. . . .</u>

(d) [If] . . . the employer or insurer is uncertain on reasonable grounds whether . . . it has liability for the claim . . . the employer or insurer may initiate compensation payments without prejudice and without admitting liability. The initial payment <u>shall</u> be accompanied by a <u>form prescribed by and filed with the Commission</u>[.]

The use of the word "shall" in the statute indicates that the use of an Industrial Commission form to admit liability is mandatory. *Bostick v. Kinston-Neuse Corp.*, 145 N.C. App. 102, 110, 549 S.E.2d 558, 563 (2001) (use of "shall" means "the provisions of G.S. § 97-18(g) are mandatory"). Specifically, Industrial Commission Form 60, "Employer's Admission of Employee's Right to Compensation, [G.S. 97-18(b)]," references N.C.G.S. § 97-18(b), and should be filed by an employer who wishes to admit liability. Similarly, Form 61, Denial of Workers' Compensation Claim, corresponds to N.C.G.S. § 97-18(c); and Form 63, Notice to Employee of Payment of Compensation Without Prejudice, references N.C.G.S. § 97-18(d). The statutory requirements are further emphasized by Industrial Commission Rule 601, which provides in part:

Upon notice of a claim, the employer <u>must admit or deny compensability</u> of the claim to the Commission <u>within 14 days</u> after the employer has written or actual notice of the claim, <u>or commence payment without prejudice</u> pursuant to N.C. Gen. Stat. § 97-18(d).

Thus, we conclude that defendants in the case *sub judice* were required under N.C.G.S. § 97-18 and Industrial Commission Rule 601 to file an appropriate Industrial Commission form stating their position regarding liability within fourteen days of plaintiff's 5 May notification of her injury, or no later than 19 May 1998.

Although defendants argue that there have been instances in which, under specific factual circumstances, a party's failure to employ an Industrial Commission form was excused by the Industrial Commission or by this Court, the sole case cited by defendants for this proposition is *Cross v. Fieldcrest Mills*, 19 N.C. App. 29, 198 S.E.2d 110 (1973). We find *Cross* inapplicable to the facts before us, in that it (1) involves the interpretation of a totally different statutory provision, N.C.G.S. § 97-24, which does not prescribe the use of an

Industrial Commission form, and (2) was decided in 1973, many years before our present workers' compensation statute, which was amended in 1997.

Notwithstanding their failure to adhere to the clear statutory mandate to file the appropriate Industrial Commission form within the prescribed time, defendants contend that they are nevertheless entitled to direct plaintiff's medical treatment. It is undisputed that the first Industrial Commission form that defendants filed regarding their liability for plaintiff's injury was the Form 61, denying plaintiff's workers compensation claim, which was filed 31 July 1998, several months after the deadline prescribed by the statute. Moreover, although defendants claim that they accepted liability and are entitled to direct plaintiff's medical care, they acknowledge that they did not rescind the Form 61 or file a Form 60. Rather, defendants argue that their letter of 21 July 1998, sent to plaintiff's counsel and copied to the Industrial Commission, "was sufficient to constitute the filing of a Form 60," and thus served to admit plaintiff's right to compensation. We do not agree.

In its order, the Industrial Commission made the following pertinent finding of fact regarding the letter of 21 July:

. . .

15. On 21 July 1998, [defendants] wrote to plaintiff's counsel . . . that plaintiff "did have a compensable event. . . . However, further medical investigation needs to take place to determine if her current symptoms are indeed related to this contusion." . . . [Defendants] provided a copy of this letter to the Industrial Commission. This letter did not constitute an admission of defendants' liability for plaintiff's continuing medical treatment[, and] . . . did not conform to the requirements of N.C. Gen. Stat. § 97-18(b). . . . [Defendants] did not . . . admit liability for plaintiff's 29 April 1998 injury until . . . 11 February 1999[, when] . . . defendants through counsel admitted . . . [liability] for medical compensation for treatment of [plaintiffs'] injury.

Based upon this finding, the Industrial Commission concluded that defendants "having failed to admit liability for plaintiff's claim, did not obtain the right to direct plaintiff's medical treatment."

The 21 July letter fails in numerous respects to comply with N.C.G.S. § 97-18. The letter was not sent within fourteen days of notice of the injury, and was not "on a form prescribed by the

Commission." Further, the letter omitted certain information required by N.C.G.S. § 97-18(b), in that it: (1) did not notify the Industrial Commission that compensation had begun; (2) did not state plaintiff's weekly wages or weekly compensation rate; (3) did not include the date that plaintiff's disability resulting from her injury began; and (4) did not state the date compensation was begun.

Moreover, the 21 July letter failed to accept liability either for plaintiff's disability claim or for her medical expenses. Although defendants conceded in the letter that plaintiff had experienced "a compensable event," the letter expressly declined to assume responsibility for plaintiff's ongoing medical treatment unless "further medical investigation . . . [determines that] her current symptoms are indeed related to this contusion." Nor does the letter accept liability for plaintiff's disability claim; indeed defendants explicitly deny liability for plaintiff's wage claim. We conclude that the record clearly establishes that the 21 July letter did not meet the procedural or substantive requirements of N.C.G.S. § 97-18(b).

Defendants argue that if the letter of 21 July is evaluated in conjunction with their "course of conduct" it establishes that "Plaintiff's claim was accepted by Defendants." The "course of conduct" to which defendants refer consists of their letter sent on 18 June 1998, and of the Form 33R filed by defendants, which they contend establish their acceptance of liability for plaintiff's medical expenses. However, inasmuch as defendants' letter of 21 July 1998 explicitly declines to admit that plaintiff's "current symptoms are indeed related to this contusion," we conclude that the other documents to which defendants direct our attention fail to establish a "course of conduct" indicating acceptance of plaintiff's claim.

Defendants also contend that they should be excused from using an Industrial Commission form to communicate their position, arguing that the Industrial Commission generally follows only "informal policies and practices." Defendants contentions in this regard are meritless, and are contradicted by the plain language of N.C.G.S. § 97-18 and Industrial Commission Rule 601, discussed above. Defendants assert that, because they wished to accept liability only for plaintiff's medical expenses but not for her disability claim, the use of a Form 60 would have been inappropriate. We note that Form 63, Notice to Employee of Payment of Compensation Without Prejudice, was available to defendants if they wished to reserve the right to challenge liability. *See Shah v. Howard Johnson*, 140 N.C.

App. 58, 535 S.E.2d 577 (2000), *disc. review denied*, 353 N.C. 381, 547 S.E.2d 17 (2001) (Form 63 appropriate where employer has "reasonable grounds" to question its liability for plaintiff's claim).

We conclude that there is factual support in the record for the Industrial Commission's finding that defendants' 21 July letter "did not constitute an admission of defendants' liability for plaintiff's continuing medical treatment[,] . . . [and] did not conform to the requirements of N.C. Gen. Stat. § 97-18(b)." Accordingly, this finding is binding on appeal.

Further, this finding by the Industrial Commission supports its conclusion that "[d]efendants, having failed to admit liability for plaintiff's claim, did not obtain the right to direct plaintiff's medical treatment." "[T]he right to direct medical treatment is triggered only when the employer has accepted the claim as compensable." *Kanipe v. Lane Upholstery*, 141 N.C. App. 620, 624, 540 S.E.2d 785, 788 (2000). Having upheld the Industrial Commission's finding that defendants failed to accept plaintiff's claim as compensable, we necessarily affirm its conclusion that defendants did not have the right to direct plaintiff's medical treatment.

[2] Defendants argue next that plaintiff is barred from receiving wage compensation because she refused their offer of suitable employment. We disagree.

N.C.G.S. § 97-32 provides that "[i]f an injured employee refuses employment . . . suitable to his capacity he [is not] . . . entitled to any compensation . . . unless in the opinion of the Industrial Commission such refusal was justified." However:

> [I]f the proffered employment is not suitable for the injured employee, the employee's refusal thereof cannot be used to bar compensation[.] . . . Furthermore, an employer cannot avoid its duty to pay compensation by offering the employee a position that could not be found elsewhere under normally prevailing market conditions.

*Moore v. Concrete Supply Co.*, 149 N.C. App. 381, 389, 561 S.E.2d 315, 320 (2002) (citing *Peoples v. Cone Mills Corp.*, 316 N.C. 426, 342 S.E.2d 798 (1986)) (compensation not barred where "maintenance worker" position constituted "make work" specially created for plaintiff). *See also Smith v. Sealed Air Corp.*, 127 N.C. App. 359, 362, 489 S.E.2d 445, 447 (1997) ("creation for injured employees of makeshift

positions which do not exist in the ordinary marketplace will not meet an employer's responsibilities under the Workers' Compensation Act"). In the instant case, the Industrial Commission made the following pertinent findings of fact:

. . .

11. . . . [O]n 4 June 1998 . . . [defendants] offered plaintiff . . . a "temporary position[.]" . . . [Defendants] stated that the physical requirements of the position have been approved by plaintiff's treating physician. However, . . . [no one] had provided any physician with a description of the . . . position[, and] . . . defendants [did not] offer[] plaintiff any description of the nature or actual duties of the temporary, modified position[, which] . . . was to begin on 8 June 1998.

12. . . . Dr. Crowell excused plaintiff from work from 3 June 1998 through 15 July 1998.

. . . .

16. Considering plaintiff's physical restrictions, her excuse from work by Dr. Crowell, and the vague description of the temporary, modified position . . . plaintiff's non-acceptance . . . was reasonable.

These findings are supported by competent evidence in the record. Although Western offered plaintiff a temporary office job, the record establishes that Western normally employed only one full time and one part time employee in its office, and that plaintiff was right handed, was restricted from using her right arm, and had no prior clerical experience. These facts suggest that the position was "make work." Moreover, several days before the job's starting date, defendants wrote to plaintiff terminating her employment for failure to appear at the "temporary job." We conclude that there is evidence in the record to support the Industrial Commission's finding that plaintiff's refusal of this work was reasonable. Accordingly, plaintiff is not barred from receiving compensation on this ground.

## II.

[3] Defendants also argue that the Industrial Commission erred in its determination that plaintiff was entitled to temporary total disability compensation, contending that plaintiff presented "no competent evidence" that she was disabled. We disagree.

BAILEY v. WESTERN STAFF SERVS.

[151 N.C. App. 356 (2002)]

"Disability" is defined by the Workers' Compensation Act as the "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C.G.S. § 97-2(9) (2001). "Disability is a legal conclusion and will be binding on the reviewing court if supported by proper findings." *Derosier v. WNA, Inc.*, 149 N.C. App. 597, 601 562 S.E.2d 41, 44 (2002) (citing *Harris v. North American Products*, 125 N.C. App. 349, 354, 481 S.E.2d 321, 324 (1997)). An employee claiming disability benefits bears the initial burden of proof on the existence and degree of disability. *Snead v. Carolina Pre-Cast Concrete, Inc.*, 129 N.C. App. 331, 499 S.E.2d 470, *cert. denied*, 348 N.C. 501, 510 S.E.2d 656 (1998). "To do so, he must demonstrate that he is unable to earn pre-injury wages in the same employment or in any other employment and that the inability to earn such wages is due to his work-related injury." *Olivares-Juarez v. Showell Farms*, 138 N.C. App. 663, 666, 532 S.E.2d 198, 201 (2000) (citing *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982)).

In its order, the Industrial Commission made the following pertinent findings of fact:

1. . . . [P]laintiff [is] forty-seven years old[,] . . . graduated from high school[,] . . . [and has] work[ed] as a . . . nursing assistant and respiratory therapist. . . .

. . . .

4. Plaintiff is right hand dominant. . . .

. . . .

6. . . . [F]ollowing the incident . . . her right elbow became progressively swollen, discolored and painful. . . .

7. . . . Plaintiff did not work on [9 May 1998] due to right upper extremity pain. . . . Due to her absence from work on that date, Pharmagraphics terminated plaintiff[.] . . .

8. On 10 May 1998, . . . the emergency department of Forsyth Memorial Hospital . . . restricted plaintiff from using her right arm for one week[.] . . .

. . . .

12. On 4 June 1998, . . . Dr. Crowell excused plaintiff from work from 3 June 1998 through 15 July 1998.

. . . .

BAILEY v. WESTERN STAFF SERVS.

[151 N.C. App. 356 (2002)]

18. Plaintiff first [saw] Dr. O'Keefe on 30 September 1998. . . . [Her] symptoms, which she had experienced since 29 April 1998, were caused by lateral epicondylitis . . . [which] was caused by the incident on 29 April 1998.

19. Dr. O'Keefe . . . restricted plaintiff from any use of her right arm pending a follow-up evaluation in two months. . . .

20. At defendant-insurer's direction, plaintiff presented to Dr. Meyerdierks for evaluation on 28 July 1998. . . . Plaintiff did not exhibit signs of symptom magnification. . . .

. . . .

22. When the conservative treatment provided by Dr. O'Keefe failed to provide relief, he recommended that plaintiff undergo epicondylar release surgery. . . .

. . . .

26. . . . [P]laintiff [did not seek] employment after 8 May 1998. However, from 10 May 1998 through the date of the hearing, plaintiff's physicians excused her from work or imposed restrictions that severely limited the duties she was capable of performing. Considering plaintiff's age, education, work experience, work restrictions, and work excuses, any effort to obtain employment after 8 May 1998 would have been futile. 27. From 9 May 1998 through the date of the hearing before the Deputy Commissioner plaintiff was incapable of earning wages from defendant-employer or any other employer as a result of her right lateral epicondylitis.

We conclude that there is competent evidence in the record to support each of these findings of fact. Thus, they are conclusively established, notwithstanding any evidence tending to contradict the findings. *Allen v. Roberts Elec. Contr'rs.*, 143 N.C. App. 55, 546 S.E.2d 133 (2001). We further conclude that these findings support the Industrial Commission's determination that plaintiff was entitled to temporary total disability benefits. This assignment of error is overruled.

For the reasons discussed above, the order of the Industrial Commission is

Affirmed.

Judges WYNN and McCULLOUGH concur.