* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Phillips and the briefs and oral arguments before the Full Commission. The appealing parties have shown good ground to reconsider the evidence and amend the opinion of award. Accordingly the Full Commission affirms the Opinion and Award of Deputy Commissioner Phillips, with modifications.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in their Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to the N.C. Workers' Compensation Act.
2. An employee-employer relationship existed between the named employee and named employer.
3. The carrier liable on the risk is correctly named above.
4. The employee's average weekly wage will be determined from an I.C. Form 22 Wage Chart.
5. The employee sustained an injury on or about January 29, 1999.
6. The injury arose out of and in the course of employment and is compensable.
7. The parties stipulated to the following documentary evidence:
 a. Stipulated Exhibit #1: Indemnity payments made to plaintiff.
 b. Stipulated Exhibit #2: Payroll records
 c. Stipulated Exhibit #3: Amended Form 22
8. The issue before the Industrial Commission is to what extent are defendants entitled to credit for overpayment of benefits?
 * * * * * * * * * * *
Based upon all the competent evidence of record and the reasonable inferences arising therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff sustained an injury on January 29, 1999, resulting in wage loss since June 25, 2002. Defendants paid indemnity and medical benefits to plaintiff. However, defendants did not file a Form 60, Employer's Admission of Employee `s Right to Compensation, or a Form 22, Statement of Days Worked and Earnings of Injured Employee, with the Industrial Commission at that time.
2. Prior to plaintiff's injury, defendant-employer had paid plaintiff biweekly. As a result, defendants initially and erroneously calculated plaintiff's average weekly wage by dividing plaintiff's total annual wages by 26 weeks rather than by 52 weeks. This incorrect calculation by defendants resulted in a significant overstatement of plaintiff's actual average weekly wage. Accordingly, plaintiff was paid weekly benefits at a compensation rate of $281.76 from June 25, 1999, through February 20, 2004, based upon an erroneous average weekly wage of $422.62, as evidenced by Stipulated Exhibit # 1.
3. Using limited payroll information, defendants re-calculated plaintiffs average weekly wage in February 2004 to be $245.63, yielding a compensation rate of $163.76. Based upon their re-calculation and the corresponding Form 22, defendants filed a Form 60 for the first time on February 20, 2004, stating an average weekly wage of $245.63 and a compensation rate of $163.76. At that time, and without first seeking clearance or approval from the Industrial Commission, defendants unilaterally reduced their weekly compensation payments to plaintiff from $281.76 to $163.76.
4. At the hearing before the Deputy Commissioner, Ms. Suzanne Hobler, Human Resources Director for defendant-employer, testified that she had been employed for six and a half years with defendant-employer. Ms. Hobler stated that she was familiar with plaintiff's workers' compensation claim, and that within the past year she had completed an Amended Form 22 for plaintiff, filed as Stipulated Exhibit #3, based on the payroll information set forth within Stipulated Exhibit #2.
5. Upon cross examination, Ms. Hobler testified that her position required her to be involved in workers' compensation claims and that she was involved in the reporting of plaintiff's claim. Ms. Hobler stated that she was never contacted for wage information from defendant-carrier nor was she aware of any investigation of the claim performed by the carrier.
6. Ms. Hobler testified that it was her understanding that plaintiff's claim was compensable and that plaintiff was receiving weekly benefits. Ms. Hobler stated that she has not had formal training in workers' compensation and that she is aware of the initial report form, Form 19, that is required to be filed by the employer or carrier. Ms. Hobler stated that a Form 19 was filed in this claim, but was unaware if a Form 60 or Form 21 was filed.
7. Further testimony from Ms. Hobler revealed that she was in contact with defendant-carrier from 1999 until defendant-employer changed workers' compensation carriers. Ms. Hobler reiterated that defendant-carrier never requested wage information prior to the time of the change in carriers.
8. Ms. Cathy Bassy testified at the hearing before the Deputy Commissioner that she was employed with Berkshire Hathaway Homestate Companies, the parent company of defendant-carrier. Ms. Bassy is an assistant to the adjustors. Ms. Bassy testified that she was asked to supply defense counsel with a Form 22 in this claim. While she could not locate the form, she did locate the initial calculations. Ms. Bassy testified that she did not have formal training with regards to North Carolina law as far as handling workers' compensation claims.
9. Ms. Bassy testified that she was not responsible for the original calculation of the average weekly wage. Ms. Bassy recalculated the average weekly wage based on limited payroll records and then filed a Form 60 in this claim. Ms. Bassy stated that steps were taken to reduce plaintiff's compensation based on the new figures, but that she was not aware of exactly what steps were taken to reduce plaintiff benefits. According to Ms. Bassy, as of the time of the hearing before the Deputy Commissioner, plaintiff was receiving $163.76 in temporary total disability benefits.
10. The Full Commission finds that the Amended Form 22 stipulated to by the parties as Stipulated Exhibit #3 shows that plaintiffs average weekly wage at the time of her compensable injury was $214.75, yielding a compensation rate of $143.17.
11. The Full Commission finds that all pertinent records to calculate plaintiffs correct average weekly wage lay in the exclusive control and possession of defendants, and were in defendants' control and possession since at least June 25, 1999. Because defendants have offered no explanation for the delay until February 2004 in raising issues related to the proper calculation of plaintiffs average weekly wage, the Full Commission finds defendants' delay in raising such issues to be unreasonable.
12. The Full Commission further finds that it would be unduly burdensome to plaintiff to require her to repay any difference between the compensation rate of $143.17 per week that plaintiff is owed pursuant to Stipulated Exhibit #3, and the higher compensation rates defendants have paid to plaintiff to date.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact the Full Commission reaches the following additional:
 CONCLUSIONS OF LAW
1. N.C. Gen. Stat. § 97-18(b), (c) and Rule 601 require that defendants either accept or deny a claim within 14 days of having actual notice of the claim. N.C. Gen. Stat. § 97-18 further requires that notice given shall be on a form prescribed by the Commission. Bailey v. Western Staff Services,151 N.C. App. 356, 566 S.E.2d 509 (2002).
2. Defendants did not file a Form 60, or otherwise notify the Industrial Commission that plaintiff's claim was accepted in accordance with N.C. Gen. Stat. § 97-18(b), until approximately five years after receiving notice of plaintiff's claim. Given defendants' unreasonable delay in raising an issue regarding plaintiffs compensation rate, the fact that all pertinent wage records were available to defendants at the time of and all times following plaintiffs injury, and because it would be unduly burdensome to plaintiff to require her to repay to defendants any amounts of disability compensation that she has been provided through no fault of her own, the Full Commission deems it reasonable to sanction defendants for their failure to adhere to N.C. Gen. Stat. § 97-18(b) pursuant to N.C. Gen. Stat. §97-18(j). Accordingly, the Full Commission holds that defendants have constructively admitted to plaintiffs right to compensation pursuant to N.C. Gen. Stat. § 97-18(b) as of their first payment of compensation on July 20, 1999, at a compensation rate of $281.76 per week.[1]
3. Because defendants constructively admitted to plaintiffs right to compensation at a compensation rate of $281.76 per week pursuant to N.C. Gen. Stat. § 97-18(b), that compensation rate constitutes an award of the Industrial Commission pursuant to N.C. Gen. Stat. § 97-87. In accordance with N.C. Gen. Stat. §97-47, an award of the Industrial Commission may only be modified upon review by the Industrial Commission. It follows that defendants' unilateral alteration of plaintiffs compensation rate in February 2004 was contrary to law, and that plaintiff is entitled to disability compensation at a compensation rate of $281 .76 per week through at least the effective date of the Deputy Commissioner's Opinion and Award, i.e., July 14, 2005. After July 14, 2005, the compensation rate shall be $143.17 per week.
4. Because plaintiff has been entitled to compensation at a compensation rate of only $143.17 per week from July 14, 2005 through the present, it follows that defendants have some overpayment of benefits to plaintiff, and accordingly that defendants are entitled some credit or deduction for benefits paid to plaintiff to date pursuant to N.C. Gen. Stat. § 97-42. Because defendants improperly reduced plaintiffs rate of compensation payment in February 2004 without first obtaining approval from the Industrial Commission, defendants also owe plaintiff accrued benefits owed but not yet paid.
5. Plaintiff has stipulated to the Amended Form 22 set forth in Stipulated Exhibit #3, which shows that plaintiff's average weekly wage at the time of her compensable injury was $214.75, yielding a compensation rate of $143.17. Accordingly, the Full Commission, upon its own motion and pursuant to N.C. Gen. Stat. §97-47 and N.C.R. Civ. P., Rule 60, hereby modifies defendants' constructive admission of plaintiff's right to compensation to bring it into accordance with the stipulated facts of record as of July 14, 2005.
 * * * * * * * * * * *
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Plaintiff is entitled to indemnity payments in the amount of $281.76 per week from June 25, 1999, until July 14, 2005. Plaintiff is entitled to payment of the difference in temporary total disability benefits from the date defendants improperly decreased plaintiffs rate of compensation until July 14, 2005, minus the difference between $163.76 and $143.17 for the period from July 14, 2005, through the present. Defendants will pay the net amount of past due benefits that has accrued in a lump sum.
2. Effective retroactively to July 14, 2005, defendants are hereby given permission to reduce weekly compensation payments to plaintiff to $143.17.
3. An attorney's fee of 25% of the lump-sum compensation awarded to plaintiff in award paragraph 1 of this Opinion and Award is approved for plaintiff's attorney. Defendants shall pay that amount directly to plaintiffs attorney.
4. Defendants shall pay the costs.
This 19th day of July, 2006.
 S/ _____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/ ____________ BUCK LATTIMORE CHAIRMAN
 S/ ______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
[1] Pursuant to N.C. Gen. Stat. § 97-18(j), defendants' constructive admission of plaintiff's right to compensation does not prohibit defendants from contesting the compensability of, or their liability for, plaintiff's claim. However, defendants in the present action have admitted the compensability of plaintiffs claim, and challenge only the amount of the claim.